******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# GOSHEN MORTGAGE, LLC *v*. ANDREAS D. ANDROULIDAKIS ET AL.
## (AC 43002)

Elgo, Alexander and DiPentima, Js.

*Syllabus*

The plaintiff G Co. sought to foreclosure a mortgage on certain real property owned by the defendant J. The defendant A, J's now former husband, had executed a note for a loan that was used to purchase the property that secured the mortgage, and that loan was now in default. Prior to the commencement of the foreclosure action, A quitclaimed his interest in the property to J as part of a separation agreement. G Co. alleged in its complaint that it was the holder of the note and mortgage. G Co. thereafter filed a motion to substitute T Co. as the plaintiff, explaining that, since the commencement of the action, it had assigned the note and mortgage to T Co. Four days prior to commencing the foreclosure action, however, G Co. assigned the mortgage to T Co. J objected to the motion, claiming that G Co. lacked standing to litigate the action because it had not proven that it was the holder of the note at the time it commenced the action. The trial court granted the motion to substitute. Thereafter, J filed two motions to dismiss arguing that G Co. lacked standing to initiate the foreclosure because the note and mortgage had been assigned before the commencement of the action, which the court denied. Subsequently, T Co. filed a motion for summary judgment as to liability only, which the court granted, and, thereafter, the court rendered a judgment of strict foreclosure. J filed a motion to open the judgment, which the court denied, and J appealed to this court. *Held*:

1. This court found unavailing J's claim that G Co. lacked standing to initiate the foreclosure action: G Co. was in possession of the note, endorsed in blank, when it commenced the action and, therefore, had standing to do so; the trial court correctly determined that the note was endorsed in blank, and G Co. alleged in its complaint that it was the holder of the note and, although the mortgage was assigned prior to the commencement of the action, there is no indication in the record that the note itself changed hands, as the only evidence before the court indicated that G Co. was in possession of the note when the action was commenced, and it was of no consequence that the mortgage was assigned before the action commenced.

2. The trial court did not abuse its discretion in granting the motion to substitute T Co. as the plaintiff: although the court mischaracterized the nature of the assignment in granting the motion to substitute when it stated that G Co. assigned both the note and mortgage after the commencement of the action, the substitution had no substantive effect on the proceedings because the note, endorsed in blank, remained in possession of G Co., and, thus, the cause of action itself was not assigned to a legally distinct party, the substitution only having served to clarify that G Co. was bringing the foreclosure action in its capacity as trustee for T Co., and in no way prejudiced J's ability to make payments or defend against the claims brought; moreover, the court correctly determined that, contrary to J's claim, the rule of practice (§ 9-20) that allows for the substitution of a plaintiff when an action has been commenced in the name of the wrong plaintiff to cure the lack of standing of the original plaintiff, was inapplicable because G Co. had standing as holder of the note, and it was not the wrong plaintiff.

3. The trial court properly denied J's motions to dismiss; the court made an express factual finding that G Co. held the note endorsed in blank at the time the action commenced and J failed to submit any evidence in support of her motions to dismiss that called into question G Co.'s status as holder of the note.

4. The trial court properly granted T Co.'s motion for summary judgment:
   a. T Co. established a prima facie case for foreclosure; the supporting documentation submitted by T Co. in support of its motion for summary judgment established that it was the holder of the note and assignee of the mortgage as well as the terms of the note and mortgage, that A and

J were in default, and that T Co. or its predecessor were in compliance with the condition precedent to the institution of the action and, J failed to provide an affidavit or exhibit that raised a genuine issue of material fact to counter T Co.'s documentation.

b. J's alleged special defenses were without merit and did not rebut T Co.'s prima facie case; contrary to J's claim, this court has rejected arguments that trust documents or pooling and servicing agreements are relevant to the issue of standing, and, although it may not have been entirely accurate for G Co. to state that it had assigned the mortgage *since* the commencement of the action, the assignment had no substantive effect on the litigation, and it was not an abuse of the trial court's discretion to decline to characterize this statement as wilful misconduct, the court properly concluded that no statute of limitations applied to the action, and the court properly concluded that a divorce decree between A and J, which stated that J was not assuming any liability on the mortgage, had no effect on the mortgage, which J signed, and was a contract between J and G Co.

5. J's claim that the trial court improperly rendered a judgment of strict foreclosure because it never resolved the issue of standing and should have held an evidentiary hearing to determine when G Co. acquired the note was unavailing, this court having previously determined that G Co. was the holder of the note at the time the foreclosure action was commenced and had standing.

6. The trial court did not abuse its discretion in denying J's motion to open the judgment as the grounds put forth in the motion have been resolved in favor of T Co.

Argued January 20—officially released June 1, 2021

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendant Jameela Androulidakis, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the named defendant was defaulted for failure to appear; thereafter, Goshen Mortgage, LLC, as Separate Trustee for GDBT I Trust 2011-1, was substituted as the plaintiff; subsequently, the court, *Genuario, J.*, granted the substitute plaintiff's motion for summary judgment as to liability; thereafter, the court, *Genuario, J.*, rendered judgment of strict foreclosure; subsequently, the court denied the motion to open filed by the defendant Jameela Androulidakis, and the defendant Jameela Androulidakis appealed to this court. *Affirmed.*

*Jameela Androulidakis*, self-represented, the appellant (defendant).

*Christopher J. Picard*, for the appellee (substitute plaintiff).

*Opinion*

DiPENTIMA, J. The self-represented defendant, Jameela Androulidakis,[1] appeals from the judgment of strict foreclosure rendered by the trial court in favor of the substitute plaintiff, Goshen Mortgage, LLC, as Separate Trustee for GDBT I Trust 2011-1. On appeal, the defendant claims that the court improperly (1) determined that the plaintiff, Goshen Mortgage, LLC,[2] had standing to bring the foreclosure action, and thus erred by granting the plaintiff's motion to substitute and denying the defendant's motion to dismiss, (2) granted the substitute plaintiff's motion for summary judgment, (3) rendered a judgment of strict foreclosure for the substitute plaintiff, and (4) failed to grant the defendant's motion to open the judgment.[3] We affirm the judgment of the trial court.

The following facts, viewed in the light most favorable to the defendant, and procedural history are relevant to our resolution of the defendant's appeal. In July, 2007, Andreas D. Androulidakis (Andreas) executed and delivered to Chase Bank USA, N.A. (Chase Bank), a note for a loan in the original principal amount of $649,999. The loan was used to purchase property located at 73 Devils Garden Road in Norwalk (property). Only Andreas signed the note for the loan. On the same date, Andreas *and* the defendant executed and delivered to Chase Bank a mortgage on the property. The mortgage subsequently was recorded on the land records of the town of Norwalk. On October 9, 2009, ownership of the property was transferred to the defendant from Andreas by quitclaim deed as part of a separation agreement. The terms of that agreement stated that "transfer of the property to the [defendant] shall not result in her assumption of any liability of the mortgage securing the property." Andreas thereafter failed to make payments on the mortgage and eventually declared bankruptcy.

Chase Bank assigned the mortgage to JP Morgan Chase Bank, N.A. (JP Morgan), on September 3, 2009, and assigned the note to JP Morgan by way of an allonge affixed to the note dated November 4, 2009.[4] JP Morgan subsequently endorsed the note in blank. The note and mortgage were then transferred multiple times between 2009 and 2016, before ultimately being transferred to the plaintiff on June 29, 2016.[5]

On October 28, 2016, the plaintiff commenced this foreclosure action, naming both the defendant and Andreas, and alleged that the defendant was the owner of the property. In its complaint, the plaintiff alleged, inter alia, that it was the holder of the note and mortgage, that the note was in default, and that it was electing to accelerate the balance due on the note and to foreclose on the mortgage securing the note. Further, the plaintiff alleged that the defendant had been pro-

vided written notice of the default and had failed to cure the default.

Four days before this foreclosure action was commenced, however, the plaintiff assigned the mortgage to the substitute plaintiff and the assignment subsequently was recorded on March 27, 2017. The plaintiff then filed a motion to substitute the plaintiff on October 13, 2017, explaining that "since the commencement of the above entitled action, it has assigned the subject mortgage deed and note, and the cause of action, to Goshen Mortgage, LLC, as Separate Trustee for GDBT I Trust 2011-1 by written instrument . . . ." The plaintiff attached as an exhibit to the motion the notarized assignment of mortgage, bearing a seal indicating that the document had been recorded with the town clerk of Norwalk. The defendant objected to the substitution, arguing that the plaintiff had not proven adequately that it was the holder of the note at the time of commencement of the action and, thus, did not have standing to litigate the action. The court granted the motion to substitute.[6]

The defendant then filed a motion to dismiss on December 4, 2017, arguing again that the plaintiff lacked standing to initiate the foreclosure action because the note and mortgage had been assigned before the commencement of the action. The court denied the motion. The defendant filed a second motion to dismiss on April 24, 2018, arguing, again, that the plaintiff lacked standing to pursue the action, and specifically claiming that the plaintiff was not the owner of the note. The court denied the second motion to dismiss.

On July 31, 2018, the substitute plaintiff filed a motion for summary judgment as to liability under the note and mortgage, attaching as exhibits the note endorsed in blank and each of the prior assignments of the mortgage. In response, the defendant argued, inter alia, that (1) the plaintiff was not registered with the Securities and Exchange Commission (SEC), (2) a statute of limitations prevented the plaintiff from initiating the action, (3) the plaintiff was not in possession of the note "at the time it brought this current suit" and thus the substitute plaintiff lacked standing to pursue the suit brought by the plaintiff, (4) the foreclosure suit should be pursued against "the nonappearing defendant, Andreas" and (4) her due process rights had been violated. The court granted the motion for summary judgment on October 3, 2018, concluding that "the affidavit and attachments in support of the motion establish that the [substitute] plaintiff is the holder of the note and the assignee of the mortgage, as well as the terms of the note and mortgage." The court subsequently rendered a judgment of strict foreclosure, setting a law day of July 9, 2019.

On March 21, 2019, the defendant filed a motion to open the judgment, which she amended on April 24,

2019, arguing, again, that the statute of limitations barred the plaintiff's action and that the plaintiff did not have possession of the mortgage and note at the time that it brought this action. The substitute plaintiff filed an objection to the motion to open the judgment, which the court sustained. The court thus denied the motion to open the judgment. This appeal followed. Additional facts will be set forth as necessary.

## I

We first address the defendant's claims regarding standing. Specifically, the defendant claims that the court erred in finding that the plaintiff had standing to bring this foreclosure action against her and, thus, that it had subject matter jurisdiction over the action.[7] She further contends, as a result of that alleged lack of standing, that the court improperly granted the plaintiff's motion to substitute and improperly denied her first and second motions to dismiss. We reject the defendant's arguments.

The following undisputed facts are relevant to these claims. The note in question was endorsed in blank by JP Morgan. The plaintiff alleged in its complaint, dated October 24, 2016, that it had been assigned the mortgage on June 29, 2016, and that it "is the holder of said note." That same day, the plaintiff assigned the mortgage to the substitute plaintiff. Service was then effectuated on October 28, 2016, thus commencing the action.[8] Almost one year later, the plaintiff represented in its motion to substitute, dated October 13, 2017, that "since the commencement of the above entitled action, it has assigned the subject mortgage deed and note, and the cause of action, to [the substitute plaintiff] by written instrument, a copy of which is attached hereunto as Exhibit A."

## A

We first address whether the plaintiff had standing to initiate the foreclosure action, as many of the defendant's claims on appeal revolve around the argument that the plaintiff lacked standing to do so. The defendant argues that because the mortgage was assigned *prior* to October 28, 2016, the date this action was commenced, the plaintiff lacked standing to commence the action. We are not persuaded.

We begin by setting forth the law of standing in the context of foreclosure actions. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of this question of law is plenary." (Citations

omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 318, 71 A.3d 492 (2013).

"Generally, in order to have standing to bring a foreclosure action the plaintiff must, at the time the action is commenced, be entitled to enforce the promissory note that is secured by the property. . . . The plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action. . . . After the plaintiff has presented this prima facie evidence, the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action or to rebut the presumption that [the plaintiff] owns the underlying debt." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Kydes*, 183 Conn. App. 479, 487, 193 A.3d 110, cert. denied, 330 Conn. 925, 194 A.3d 291 (2018).

"The rules for standing in foreclosure actions when the issue of standing is raised may be succinctly summarized as follows. When a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt had passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that *might* give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must *prove* that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Emphasis in original; footnote omitted.) *U.S. Bank, National Assn.* v. *Schaeffer*, 160 Conn. App. 138, 150, 125 A.3d 262 (2015).

In the present case, the court determined that the note was endorsed in blank. The evidence in the record before us supports this finding. The defendant repeatedly claims that JP Morgan is the party entitled to enforce the note because the allonge is on the last page of the note: "this alleged blank endorsement is not the current endorsement because there is a subsequent special endorsement made specially to JP Morgan by Chase Bank . . . by way of an allonge permanently affixed to the end of the note." This argument is unavailing.

The document clearly demonstrates that the note was specially endorsed *to* JP Morgan then subsequently endorsed in blank *from* JP Morgan. The court correctly determined that the note was endorsed in blank.[9]

Accordingly, whether or not the plaintiff had standing to initiate the action depends on whether it had physical possession of the note on October 28, 2016. "When an instrument is endorsed in blank, it becomes payable to bearer and may be negotiated by transfer of possession alone. . . . General Statutes § 42a-3-205 (b)." (Internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App. 570, 577, 989 A.2d 606, cert. denied, 295 Conn. 922, 991 A.2d 564 (2010). Regardless of the timing of the assignment of the *mortgage*, the undisputed facts demonstrate that the plaintiff possessed the note at the time of the commencement of this action.

Prior to the commencement of the action, the plaintiff assigned the mortgage to the substitute plaintiff, and this assignment was not recorded until March 27, 2017, but the note itself never changed hands. Because the plaintiff transferred the note *to itself* as trustee,[10] the physical possession of the note never changed.

It is well established that the holder of a note has standing to enforce a mortgage even if the mortgage is not assigned to that party. "General Statutes § 49-17 permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him. . . . The statute codifies the common-law principle of [long-standing] that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage. . . . Our legislature, by adopting § 49-17, has provide[d] an avenue for the holder of the note to foreclose on the property when the mortgage has not been assigned to him." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Fequiere*, supra, 119 Conn. App. 576–77. "This principle is intended to address the situation in which ownership of the note and ownership of the mortgage rest in different hands at the time the foreclosure action commenced." *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 323.

The plaintiff alleged in its complaint that it was the holder of the note and in possession of the mortgage. Before the action actually was commenced, the mortgage was assigned to the substitute plaintiff, but there is no indication that possession of the note changed. A plaintiff that "alleged that it possessed the note at the time it commenced [the] action, [is] entitled to rely upon that allegation unless the defendant present[s] facts to the contrary . . . ." *Bank of America, N.A.* v. *Kydes*, supra, 183 Conn. App. 489. The only evidence before the court indicated that the plaintiff was in pos-

session of the note when the present action was commenced. The defendant has not pointed us to any evidence that disputes the court's conclusion that the plaintiff was the holder of the *note* at the time the foreclosure action was commenced, other than the fact that the *mortgage* had been assigned prior to the commencement, which has no bearing on possession of the note. See *HSBC Bank USA, N.A.* v. *Navin,* 129 Conn. App. 707, 711–12, 22 A.3d 647 (plaintiff had standing to commence foreclosure action where defendant offered no evidence contesting plaintiff's affidavit asserting that note endorsed in blank was delivered to plaintiff prior to commencement of action), cert. denied, 302 Conn. 948, 31 A.3d 384 (2011). Additionally, we note that counsel for both the plaintiff and the substitute plaintiff, which remained the same throughout the proceedings, repeatedly represented to the court, both before and after the motion to substitute had been granted, that it had possession of the note at all relevant times. See *Equity One, Inc.* v. *Shivers,* 310 Conn. 119, 132–33, 74 A.3d 1225 (2013) (explaining that "it [is] proper for [a] court . . . to rely on the representation of the plaintiff's counsel that the note he produced . . . was the note that the plaintiff held at the time of the commencement of the action . . . [and that] [i]n the absence of any fact based challenge to counsel's representation, such reliance was proper . . . because the plaintiff's counsel is an officer of the court").

The defendant's principal argument is that the mortgage had been assigned before commencement of the action, and that the substitution of the plaintiff did not occur until October, 2017. Because the plaintiff was the holder of the note when the action began, it is of no consequence to an analysis of standing that the mortgage was assigned before the proceeding commenced.[11] "It is well settled that the holder of a note secured by a mortgage has standing to commence a foreclosure action, regardless of whether it also holds the mortgage." *GMAC Mortgage, LLC* v. *Ford,* 144 Conn. App. 165, 174, 73 A.3d 742 (2013). "The plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Kydes,* supra, 183 Conn. App. 487. Put another way, that the named plaintiff on the complaint does not match the name on the assignment of mortgage at the time of commencement does not affect whether the plaintiff is entitled to foreclose on the mortgage. The plaintiff was in possession of the note, endorsed in blank, when it commenced the present foreclosure action and therefore it had standing to do so. Accordingly, the court had subject matter jurisdiction to adjudicate the action, and the defendant's claim fails.

Having resolved the plaintiff's standing to initiate the action, we next address whether the court erred in granting the plaintiff's motion to substitute. The defendant argues that the court made erroneous findings of fact and relied on an incorrect rule of practice in granting the motion. We are not persuaded.

On October 13, 2017, pursuant to Practice Book § 9-16,[12] the plaintiff filed a motion to substitute the plaintiff. The defendant objected, arguing that Practice Book § 9-20[13] was the applicable rule of practice because the mortgage had been assigned prior to commencement of the action and hence the plaintiff lacked standing to initiate the action. The court granted the motion, explaining that the plaintiff "assigned the mortgage deed and note . . . after commencement of the fore-closure action. . . . [The] [d]efendant claims that Practice Book [§] 9-20 applies. That section provides that the court may allow a substitute plaintiff only if the 'wrong plaintiff' was named in the first instance. The original plaintiff is not the 'wrong plaintiff.' [Practice Book §] 9-16 rather than [§] 9-20 applies. Additionally, the defendant alleges no facts inviting prejudice to [her] defense."

We first set forth the applicable standard of review. "Practice Book § 9-16 confers authority on a trial court judge to substitute a new plaintiff as the sole plaintiff in a pending action as long as the substitution does not prejudice the defense of the action. The decision whether to grant a motion for the [substitution] of a party to pending legal proceedings rests generally in the sound discretion of the trial court. . . . Our review is limited to a determination of possible abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Trevek Enterprises, Inc.* v. *Victory Contracting Corp.*, 107 Conn. App. 574, 578–79, 945 A.2d 1056 (2008). "In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness . . . and only if its action discloses a clear abuse of discretion is our interference warranted." (Internal quotation marks omitted.) *Joblin* v. *LaBow*, 33 Conn. App. 365, 367, 635 A.2d 874 (1993), cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994).

"Our rules of practice . . . permit the substitution of parties as the interests of justice require." *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, 31 Conn. App. 80, 84, 623 A.2d 517, cert. denied, 226 Conn. 908, 625 A.2d 1378 (1993). "As long as [the] defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added." (Internal quotation marks omitted.) *Rana* v. *Terdjanian*, 136 Conn. App. 99, 110, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012).

In the present case, the court stated that "[the plaintiff] assigned the mortgage deed and note in the captioned matter to [the substitute plaintiff] after commencement of the foreclosure action." The defendant argues that the assignment of mortgage is dated before the commencement of the action, so the court's factual findings are clearly erroneous and Practice Book § 9-16 was inapplicable to the facts of the case. Although the court may have mischaracterized the nature of the assignment, we conclude that the court did not abuse its discretion in granting the motion to substitute.

Practice Book § 9-16 "provides for the substitution of a plaintiff when the *cause of action itself* is assigned to a different party." (Emphasis added.) *Hudson City Savings Bank* v. *Hellman*, 196 Conn. App. 836, 847, 231 A.3d 182 (2020). In that case, the original plaintiff merged into the substitute plaintiff approximately two years after a foreclosure action had been initiated. Id., 841. The original plaintiff, Hudson City Savings Bank (HCSB), commenced the foreclosure action on December 4, 2013. Id., 839. HCSB then moved for summary judgment as to liability on August 4, 2017, which the court subsequently granted. Id., 839–41. Then, on November 28, 2017, HCSB filed a motion to substitute Manufacturers and Traders Trust Company (M&T) as the plaintiff, revealing that HCSB had merged into M&T as of November 1, 2015, twenty-one months before HCSB had filed the motion for summary judgment. Id., 841. The motion to substitute was predicated, in part, on Practice Book § 9-16. Id., 847. This court, however, found that no assignment of the underlying cause of action had actually occurred, because no assignment was necessary, as HSBC's assets, including the note and the cause of action, automatically had vested in M&T by operation of law as a result of the merger. Id. This court concluded that even though no assignment of the cause of action had occurred, the substitution "had no substantive effect" because, irrespective of the substitution, the surviving entity subsumes all claims and assets of the other party to the merger. Id., 845–47. This court thus concluded that § 9-16 was an appropriate vehicle to allow substitution. Id., 842–47. Similarly, in the present case, because the note, which was endorsed in blank, remained in the possession of the plaintiff, the cause of action itself was not assigned to a legally distinct party. See part I A of this opinion. The substitution here, much like the one in *Hudson City Savings Bank*, "had no substantive effect" on the proceedings. *Hudson City Savings Bank* v. *Hellman*, supra, 846.

Additionally, the defendant claimed in her objection to the motion that Practice Book § 9-20 should have applied to the motion to substitute. Section 9-20 is intended to "[cure] the lack of standing of the original plaintiff"; (internal quotation marks omitted) *Fairfield*

*Merritview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 553, 133 A.3d 140 (2016); and "allow[s] a substituted plaintiff to enter a case [w]hen any action has been commenced in the name of the *wrong* person as [the] plaintiff." (Emphasis added; internal quotation marks omitted.) Id., 552. Because the plaintiff had standing, as holder of a note endorsed in blank, it was not the *wrong* plaintiff. The court correctly determined that § 9-20 was inapplicable to the facts of the case.

Finally, Practice Book § 9-16 provides that substitution should not be granted if it would "prejudice the defense of the action as it stood before such change of parties." The court correctly stated that that the defendant failed to allege any facts that would prejudice her defense. The defendant maintains on appeal that "because [§ 9-16] is inapplicable [the defendant] did not need to allege prejudice." Even if the defendant was not required to allege prejudice, we agree with the court that the defendant did not suffer any prejudice from the substitution. The substitution only served to clarify that the plaintiff was bringing the foreclosure action in its capacity as trustee for GDBT I Trust 2011-1. This, in no way, prejudiced the defendant's ability to make payments on the mortgage or to defend against the claims brought. See *Hudson City Savings Bank* v. *Hellman,* supra, 196 Conn. App. 846–48 (granting substitution under § 9-16 after merger involving plaintiff as merger would have no substantive effect on proceedings).

We iterate that granting a motion to substitute should be found improper only if there is a clear abuse of discretion and that "every reasonable presumption should be indulged in favor of its correctness . . . ." (Internal quotation marks omitted.) *Joblin* v. *LaBow,* supra, 33 Conn. App. 367. It was not a clear abuse of discretion for the court to allow the substitution.[14]

C

We next address the defendant's two motions to dismiss. The defendant maintains that the court improperly denied her motions to dismiss because the plaintiff lacked standing to initiate the foreclosure action, the substitute plaintiff improperly was allowed to maintain the action, the court failed to inspect the note, and the court should have conducted an evidentiary hearing to determine when the plaintiff obtained possession of the note. We are not persuaded.

We first set forth the standard of review for a motion to dismiss. "In ruling [on] whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . If . . . the plaintiff's standing does not adequately appear from all materials of record, the complaint must

be dismissed." (Citation omitted; internal quotation marks omitted.) *Burton* v. *Dominion Nuclear Connecticut, Inc.*, 300 Conn. 542, 550, 23 A.3d 1176 (2011).

Because the lack of standing implicates the trial court's subject matter jurisdiction, it properly is raised by way of a motion to dismiss. See *May* v. *Coffey*, 291 Conn. 106, 113, 967 A.2d 495 (2009). "Our standard of review of a trial court's findings of fact and conclusions of law in connection with a motion to dismiss is well settled. A finding of fact will not be disturbed unless it is clearly erroneous. . . . [If] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts. . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *JP Morgan Chase Bank, N.A.* v. *Simoulidis*, 161 Conn. App. 133, 135–36, 126 A.3d 1098 (2015), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016).

After the court granted the motion to substitute, the defendant filed a revised motion to dismiss on December 4, 2017, arguing that the plaintiff lacked standing to initiate the action. The substitute plaintiff objected to the motion, stating that "[t]he plaintiff attests that it and/or its agents have been in possession of the original note, dated July 23, 2007, and have been since before the inception of this action. The note is endorsed in blank." The substitute plaintiff included a copy of the note with the objection. The court denied the motion, concluding that "[t]he defendant is unable to show that the plaintiff did not have standing. . . . At the time the action commenced on October 28, 2016, the plaintiff held the note endorsed in blank. The defendant is unable to rebut the presumption that the holder of the note is also the owner of the debt and entitled to enforce the note." The defendant filed a second motion to dismiss on April 24, 2018, arguing, again, that the plaintiff lacked standing to initiate the action and that the substitute plaintiff lacked standing to maintain the action.[15] The court denied the second motion to dismiss.

We have determined previously that the plaintiff, as possessor of a note endorsed in blank, had standing to initiate the action and that it was proper for the court to allow substitution. The defendant, again, contends that there is no evidence that the court ever examined the note to determine if it was endorsed in blank. The note, however, was provided with the substitute plaintiff's objection to the motion to dismiss and the court appropriately concluded that the note was endorsed in blank. We will not presume that the court came to this conclusion without examining the note. See *State* v. *Mills*, 80 Conn. App. 662, 670, 837 A.2d 808 (2003), cert. denied, 268 Conn. 914, 847 A.2d 311 (2004).

The defendant also claims that the court should have

conducted an evidentiary hearing to determine when the plaintiff obtained possession of the note, pursuant to *LaSalle Bank, N.A.* v. *Bialobrzeski*, 123 Conn. App. 781, 783, 3 A.3d 176 (2010), in which this court held that it could not rule on the issue of standing without a finding from the trial court as to when the plaintiff acquired the note. This court remanded the case for a hearing to determine whether the plaintiff held the note when the action was commenced, explaining that "[w]e cannot review this claim because the court made no factual finding as to when the plaintiff acquired the note. Without that factual determination, we are unable to say whether the court improperly denied the defendant's motion to dismiss." Id., 788. Unlike *LaSalle Bank, N.A.*, in the present case the court made an *express* factual finding that the plaintiff held the note endorsed in blank at the time the action commenced. The defendant can point to no facts or evidence that rebut this finding, other than her repeated contention that the note was assigned prior to commencement. As we explained, the record contains no evidence of such an assignment.

Our review of the record confirms that the defendant failed to submit any evidence in support of her motions to dismiss that called into question the plaintiff's status as the holder of the note. We conclude, therefore, that the court properly denied the defendant's motions to dismiss.

## II

Next, we address the defendant's claim that the court improperly granted the substitute plaintiff's motion for summary judgment. The substitute plaintiff responds that the documents provided with its motion for summary judgment appropriately demonstrated the absence of any genuine issue of material fact and that the defendant failed to present any evidence that adequately rebutted the substitute plaintiff's prima facie case. We agree with the substitute plaintiff and, accordingly, reject the defendant's claim.

We first set forth the standard of review for summary judgment in a foreclosure action. "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *GMAC Mortgage, LLC* v. *Ford*, supra, 144 Conn. App. 175. "[I]n seeking summary judgment, it is the movant who has the burden of showing . . . the absence of any genuine issue as to all the material facts [that], under applicable principles of substantive law, entitle him to a judgment as a matter of law." (Internal quotation marks omitted.) Id.

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent

to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." (Citations omitted.) Id., 176.

A party opposing summary judgment "must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Emphasis omitted; internal quotation marks omitted.) *Little* v. *Yale University*, 92 Conn. App. 232, 234, 884 A.2d 427 (2005), cert. denied, 276 Conn. 936, 891 A.2d 1 (2006). In other words, "[d]emonstrating a genuine issue [of material fact] requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . A material fact is one that will make a difference in the result of the case. . . . To establish the existence of a [dispute as to a] material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact . . . . The issue must be one which the party opposing the motion is entitled to litigate under [its] pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment." (Citations omitted; internal quotation marks omitted.) *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 244–45, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995).

A

We first address the defendant's claim that the substitute plaintiff failed to establish an undisputed prima facie case. Specifically, the defendant argues that JP Morgan is the party entitled to enforce the note, based on the allonge attached to the last page of the note, and, again, that the plaintiff lacked standing at the commencement of the action. As discussed previously in this opinion, these arguments are meritless. The note was endorsed in blank and possessed by the original plaintiff at the time of commencement and then by the substitute plaintiff after the motion to substitute was granted. See part I A of this opinion. The substitute plaintiff attached an affidavit from its loan servicing agent to its motion for summary judgment that set forth the status of the note and the various transfers of the mortgage. The court appropriately relied on this document and concluded that there was no genuine issue

of material fact, stating: "In the instant action the affidavit and attachments in support of the motion establish that the [substitute] plaintiff is the holder of the note and the assignee of the mortgage, as well as the terms of the note and mortgage. They also establish the defendants' default and the [substitute] plaintiff's (or its predecessor's) compliance with the condition precedent to the institution of this action. The defendant, while filing a memorandum, has provided nothing to counteract the import of the [substitute] plaintiff's affidavit and exhibits. The defendant does not provide an affidavit or exhibit which raises a genuine issue of material fact." The substitute plaintiff's supporting documentation, which was not countered by the defendant, was sufficient to establish its undisputed prima facie case.

B

We next address the defendant's argument that the court improperly concluded that her special defenses did not apply. Specifically, the defendant claimed that the plaintiff was not registered with the SEC, and thus lacked standing, that the doctrine of unclean hands should have barred summary judgment, that a statute of limitations barred the plaintiff's action, and that the defendant could not be liable for the debt pursuant to a divorce decree.[16] The court did not explicitly address any of the special defenses, but explained that "[the defendant] [did not] file any affidavit or exhibits supporting the allegations that she set forth in her special defenses" and declined to explicitly discuss the special defenses. We agree with the court that all of the alleged special defenses are without merit.

1

The defendant first argues that the court erred in failing to consider her argument that the plaintiff "is not registered as a trustee with the [SEC] . . . ." In support of this claim the defendant attached attestations from the SEC that the plaintiff did not appear in a search of their records. This court has rejected arguments from defendants that trust documents or pooling and servicing agreements are relevant to the issue of standing.[17]

As this court has explained, a foreclosure plaintiff is not required "to produce evidence of ownership deriving from a pooling and servicing agreement in making its prima facie case . . . . The relevance of securitization documents [to] a lender's standing to foreclose a mortgage is questionable. Simply put, a borrower has a contract—the note and mortgage—with the owner or holder of the loan documents. The borrower, however, is not a party to the pooling and servicing agreement, commonly referred to as a trust document. . . . It is a basic tenet of contract law that only parties to an agreement may challenge its enforcement. . . . [C]lose scrutiny of trust documents and challenges to their

veracity appear to offer little benefit to the court in determining the owner or holder of a note in a particular case. If admissible evidence of holder status has been presented, a borrower must then challenge those facts by competent evidence addressed to the delivery of the loan documents. In most instances, a borrower's challenge to the content of trust documents or other borrower claims appear to have little relevance to the issue of standing." (Citation omitted; internal quotation marks omitted.) *Bank of New York Mellon* v. *Horsey*, 182 Conn. App. 417, 443, 190 A.3d 105, cert. denied, 330 Conn. 928, 194 A.3d 1195 (2018). "A fundamental problem with the examination of standing is the confusion resulting from a failure to distinguish the loan documents being enforced from the securitization documents that are not directly involved in the foreclosure. To have standing in a mortgage foreclosure, the plaintiff must have some interest in the note secured by the mortgage. Possession of the original note . . . can provide a basis to confer standing." (Footnote omitted.) D. Caron & G. Milne, Connecticut Foreclosures (9th Ed. 2019) § 30-3, pp. 467–68. Accordingly, the court did not err in declining to address the defendant's arguments concerning the plaintiff's status with the SEC.

### 2

The defendant next claims that the doctrine of unclean hands should have barred summary judgment because the plaintiff was misleading when it stated that the mortgage had been assigned since commencement of the action. "Our Supreme Court has recognized that the [a]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court. . . . The exercise of [such] equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action. . . . Whether the trial court properly interpreted the doctrine of unclean hands, however, is a legal question distinct from the trial court's discretionary decision whether to apply it." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Lorson*, 183 Conn. App. 200, 221, 192 A.3d 439, cert. granted on other grounds, 330 Conn. 920, 193 A.3d 1214 (2018). "The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Internal quotation marks omitted.) Id., 222–23.

The defendant devoted one sentence in her objection

to the motion for summary judgment to her argument that unclean hands should bar summary judgment and offered no evidence or exhibits demonstrating wilful misconduct on the part of the plaintiff other than the claim that "[the plaintiff] explicitly stated an untruth, i.e., that the assignment of mortgage had occurred 'since' its suit had 'commenced,' when in fact it had occurred prior to it." As discussed previously, it may not have been entirely accurate for the plaintiff to state that it had assigned the mortgage *since* commencement of the action, but it was not an abuse of the court's broad discretion to decline to characterize this statement as wilful misconduct, particularly because the assignment had no substantive effect on the litigation and resulted in no prejudice to the defendant.

3

The defendant next argues that the statute of limitations set forth in General Statutes § 42a-3-118 should have barred enforcement of the mortgage. This court previously has rejected the argument that § 42a-3-118 applies to a mortgage foreclosure. See *Federal Deposit Ins. Corp.* v. *Owen*, 88 Conn. App. 806, 814–15, 873 A.2d 1003, cert. denied, 275 Conn. 902, 882 A.2d 670 (2005); see also D. Caron & G. Milne, supra, § 32-3:14, p. 622 ("[s]ince a foreclosure is an action sounding in equity, there is no statute of limitations defense to a mortgage foreclosure"). Accordingly, the court correctly concluded that no statute of limitations applied to the action.

4

Lastly, the defendant argues that the plaintiff could not bring a foreclosure action against her because she was not personally liable for the debt secured by the mortgage pursuant to a divorce decree. The divorce decree, a copy of which the defendant included in her objection to the motion for summary judgment, states in relevant part: "As part of the division of property, the [h]usband shall execute a [quitclaim] deed to [the defendant] of [the property] within ten days of the date hereof. . . . The transfer of the property to [the defendant] shall not result in her assumption of any liability of the mortgage securing the property."

Although the defendant did not sign the note, her argument fails because she is the record owner of the property and she signed the mortgage above the line marked "borrower." The first page of the document states that " '[b]orrower is Andreas D. Androulidakis and [the defendant]. . . . Borrower is the mortgagor . . . ." The mortgage states on the signature page: "By signing below, [b]orrower accepts and agrees to the terms and covenants contained in this [s]ecurity [i]nstrument . . . ." "A mortgage is a contract of sale executed, with power to redeem. . . . The condition of a mortgage may be the payment of a debt, the indem-

nity of a surety, or the doing or not doing [of] any other act. . . . Black's Law Dictionary defines mortgagor as '[o]ne who, having all or some part of the title to property, by written instrument pledges that property for some particular purpose such as security for a debt. That party to a mortgage who gives legal title or a lien to the mortgagee to secure the mortgage loan.' Black's Law Dictionary (5th Ed. 1979). Also '[o]ne who mortgages property; the mortgage-debtor, or borrower.' . . .

"It has long been established at common law that [t]he mortgage is an incident only to the debt, which is the principal; it cannot be detached from [the debt]; distinct from the debt, it has no determinate value; and the assignee must hold it, at the will and disposal of the creditor, who has the note or bond, for which it is a collateral security." (Citations omitted; internal quotation marks omitted.) *Citibank, N.A.* v. *Stein*, 186 Conn. App. 224, 249, 199 A.3d 57 (2018), cert. denied, 331 Conn. 903, 202 A.3d 373 (2019). The defendant may not be personally liable for the note, but her status as a mortgagor of the property entitles the plaintiff to bring a foreclosure proceeding against her. The court correctly concluded that the divorce decree, which incorporated a contract between the defendant and Andreas, has no effect on the mortgage, which is a contract between the plaintiff and the defendant. See id., 249–50.

### III

The defendant next claims that the court improperly rendered a judgment of strict foreclosure in favor of the substitute plaintiff. We do not agree.

"We review a judgment of strict foreclosure to determine whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Tarzia*, 150 Conn. App. 660, 664, 92 A.3d 983, cert. denied, 314 Conn. 905, 99 A.3d 635 (2014).

The defendant's grounds for this claim are that the issue of the substitute plaintiff's standing was never resolved by the court and that the court should have conducted an evidentiary hearing to determine when the plaintiff acquired the note. Because we have resolved these issues in favor of the substitute plaintiff, we conclude that the court properly rendered a judgment of strict foreclosure.

### IV

Lastly, the defendant claims that the court improperly denied her motion to open the judgment of strict fore-

closure because she was not a party to the note.[18] Specifically, the defendant claimed that the foreclosure proceedings violated her due process rights because "as a non-obligor on the note" she could not properly challenge the standing of the plaintiff. The defendant's actions at the trial court and on appeal belie her argument. The defendant raised multiple challenges to the plaintiff's standing and each challenge was addressed by the court.

Further, because a motion to open a judgment is reviewed for an abuse of discretion, we only consider the arguments that were placed before the court. "A motion to open a judgment of strict foreclosure is addressed to the discretion of the trial court . . . and unless that discretion was abused or was based upon some error in law, the denial of the motion must stand." (Internal quotation marks omitted.) *Countrywide Home Loans Servicing, L.P.* v. *Peterson*, 171 Conn. App. 842, 848–49, 158 A.3d 405 (2017). The defendant advanced two grounds in her motion to open the judgment, claiming that "the original plaintiff filed this foreclosure suit . . . after the expiration of the statute of limitations . . . [and] the original plaintiff did not have possession of the mortgage and note at the time that it brought the suit." We have resolved these issues in favor of the plaintiff. Accordingly, the court did not abuse its discretion in denying the defendant's motion to open the judgment.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] The complaint named as defendants Jameela Androulidakis and her erstwhile husband Andreas D. Androulidakis (Andreas). Jameela Androulidakis received title to the property in question as part of a divorce decree in 2009. Andreas never appeared and the court granted a motion for default for failure to appear as to Andreas on June 2, 2017. He is not involved in this appeal. As subsequent encumbrancers of the property, Hop Energy, LLC and Petro, Inc., also were named as defendants but are not involved in this appeal. Therefore, we refer to Jameela Androulidakis as the defendant throughout this opinion.

[2] This action was commenced by the plaintiff, Goshen Mortgage, LLC. On October 13, 2017, Goshen Mortgage, LLC, filed a motion to substitute, claiming that it had assigned the mortgage and note to Goshen Mortgage, LLC, as Separate Trustee for GDBT I Trust 2011-1. The court granted the motion to substitute. In this opinion, we refer to Goshen Mortgage, LLC, as the plaintiff, and to Goshen Mortgage, LLC, as Separate Trustee for GDBT I Trust 2011-1, as the substitute plaintiff.

[3] At oral argument before this court, the defendant also argued that service of process was insufficient. This issue was not raised before the trial court nor was it briefed on appeal. We therefore decline to review it. "We generally do not consider claims raised for the first time at oral argument." *Zenon* v. *Mossy*, 114 Conn. App. 734, 736 n.2, 970 A.2d 814 (2009); see also *Alexander* v. *Tyson*, 122 Conn. App. 493, 494 n.1, 999 A.2d 830 (declining to review issues "that were not considered or decided by the trial court"), cert. denied, 298 Conn. 928, 5 A.3d 488 (2010). Further, any claim of lack of jurisdiction over the person or insufficiency of service of process is waived if not raised by a motion to dismiss filed within thirty days of filing an appearance. See Practice Book § 10-32.

[4] An allonge is defined as "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary

(11th Ed. 2019), p. 95.

[5] The plaintiff provided the complete chain of title in its complaint; the substitute plaintiff also provided the complete chain of title in an affidavit provided with its motion for summary judgment, and in exhibits provided with the motion for summary judgment.

[6] The court initially granted this motion and several others without explanation. On July 1, 2019, after filing her appeal, the defendant filed several notices pursuant to Practice Book § 64-1 requesting a memorandum of decision for several of the court's rulings. In response to the defendant's § 64-1 notices, the court subsequently issued memoranda of decision as to the order granting the motion to substitute the plaintiff, the order denying the defendant's first motion to dismiss, the order granting the substitute plaintiff's motion for summary judgment as to liability, and the order granting the substitute plaintiff's motion for judgment of strict foreclosure. We refer to these articulated orders when reviewing the court's rulings throughout this opinion.

The defendant's notices filed pursuant to Practice Book § 64-1 also sought a memorandum of decision regarding her second motion to dismiss. The court issued an order stating that the denial of the defendant's second motion to dismiss was not within the scope of § 64-1. On August 9, 2019, the defendant filed a motion for review, in which she requested that this court order the trial court to issue a memorandum of decision as to the order denying her second motion to dismiss. This court granted the defendant's motion for review, but denied the relief requested therein, agreeing with the trial court that the denial of the motion to dismiss was not within the scope of § 64-1, as it did not represent a final judgment. See *Sasso* v. *Aleshin*, 197 Conn. 87, 90, 495 A.2d 1066 (1985). Regardless, given that the defendant made identical arguments in her first and second motions to dismiss and the court has issued a memorandum of decision as to the order denying the first motion to dismiss, our ability to properly review these rulings is not impeded. See part I C of this opinion.

[7] In its brief, the substitute plaintiff construed the defendant's claim as an attack on this court's jurisdiction over the appeal. While neither party explicitly argues that this court lacks jurisdiction, we note that the trial court's judgment of strict foreclosure is an appealable final judgment and the defendant is aggrieved by that judgment. Consequently, this court has jurisdiction over the defendant's appeal under General Statutes § 52-263. Further, an appellate court has jurisdiction to determine whether the trial court had subject matter jurisdiction to hear the case, and a determination that the trial court lacked jurisdiction does not deprive an appellate court of its jurisdiction over an appeal. See *State* v. *Martin M.*, 143 Conn. App. 140, 143–44 n.1, 70 A.3d 135, cert. denied, 309 Conn. 919, 70 A.3d 41 (2013); *Gemmell* v. *Lee*, 42 Conn. App. 682, 684 n.3, 680 A.2d 346 (1996); *Augeri* v. *Planning & Zoning Commission*, 18 Conn. App. 722, 728 n.6, 560 A.2d 985 (1989).

[8] "It has long been the law in this state that an action is deemed to be commenced on the date service is made on the defendant." *Stingone* v. *Elephant's Trunk Flea Market*, 53 Conn. App. 725, 729, 732 A.2d 200 (1999).

[9] The defendant also argues that the court never actually inspected the note to determine whether it was endorsed in blank. While the court did not explicitly state that it had examined the note in the memorandum granting the motion to substitute, the court later stated during a hearing on the motion for a judgment of strict foreclosure that "[t]he court has reviewed the original note as well as its endorsements and allonges, finds that the plaintiff is the holder of the note. The court has also reviewed certified copies of the mortgage and six assignments and finds that the plaintiff is the assignee of the mortgage."

[10] Because the defendant's arguments on appeal are largely based on the plaintiff's status as a trustee for a loan pool, we provide a summary of loan pools and the role of trustees. "Typically, mortgage loans are placed into asset pools or 'securities' based upon various criteria. Loan pools are formed based upon certain factors, including credit ratings, loan-to-value ratios, conforming and non-conforming loans, and other indicia of volatility. One major advantage of placing mortgage loans into pools sold as mortgage-backed securities is that these securities are designed to reduce or reallocate certain risks inherent in the assets, thereby making them less volatile and more appealing to investors. . . . A servicing agent, either a bank or a mortgage company, operates to collect loan payments, escrows for taxes and insurance, and to communicate with the borrower. The servicers and trustees of the pools are then rated on the quality of servicing and the

application of various credit enhancements to guard against risk and to maintain stability within the pool. [The] levels and layers of entities can involve multiple parties, including the trustee of the pooling and servicing agreement, a servicer of the pooling agreement, and sometimes a sub-servicing entity . . . ." (Footnote omitted.) D. Caron & G. Milne, Connecticut Foreclosures (9th Ed. 2019) § 30-2, pp. 458–59. "The borrower, however, is not a party to the pooling and servicing agreement, commonly referred to as a 'trust' document. The parties to a pooling and servicing agreement are usually: (1) the trustee, who acts on behalf of the bondholders, (2) a master servicer, who collects payments for the trust, and (3) the initial depositor that establishes the trust." Id., p. 470.

[11] Additionally, we note that it would have been legally permissible for the plaintiff to bring the action in the name of Goshen Mortgage, LLC, notwithstanding the assignment of the mortgage, as General Statutes § 52-106 allows a trustee plaintiff to sue or be sued without joining the persons represented by him and beneficially interested in the action. See *Chase Home Finance, LLC* v. *Fequiere*, supra, 119 Conn. App. 579 (explaining that trustee has statutory right to bring action in its own capacity where trustee has legal title to trust res).

[12] Practice Book § 9-16 provides: "If, pending the action, the plaintiff assigns the cause of action, the assignee, upon written motion, may either be joined as a coplaintiff or be substituted as a sole plaintiff, as the judicial authority may order; provided that it shall in no manner prejudice the defense of the action as it stood before such change of parties."

[13] Practice Book § 9-20 provides: "When any action has been commenced in the name of the wrong person as plaintiff, the judicial authority may, if satisfied that it was so commenced through mistake and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff."

[14] "Even assuming that Practice Book § 9-16 was not the appropriate basis to bring about the substitution, we underline the wide discretion afforded to courts for the substitution of parties given our state's policy of ensuring that a real party of interest is added as a party to the underlying action." *Hudson City Savings Bank* v. *Hellman*, supra, 196 Conn. App. 847 n.8.

To support her argument that Practice Book § 9-16 was not an appropriate vehicle to allow substitution, the defendant repeatedly cites *Ion Bank* v. *J.C.C. Custom Homes, LLC*, 189 Conn. App. 30, 35 n.3, 206 A.3d 208 (2019), in which this court stated that "[b]ecause the plaintiff assigned the note to [the substitute plaintiff] prior to the commencement of the action, rather than during its pendency as contemplated by Practice Book § 9-16, this rule is inapplicable." In *Ion Bank*, this court held that the trial court appropriately denied the plaintiff's efforts to substitute the assignee as plaintiff. Id., 41–42. Because the efforts to substitute the plaintiff were ineffectual, this court agreed with the trial court's ultimate determination "that the plaintiff lacked standing to bring the action because, *prior to commencing it*, the plaintiff had assigned its interest in the underlying promissory note to [the substitute plaintiff]." (Emphasis added). Id., 33. The note in *Ion Bank*, however, was not endorsed in blank, and thus had to be expressly assigned to the substitute plaintiff. Id., 34. The plaintiff assigned the note one day before the action was commenced. Id. As such, there was a clear assignment of the cause of action occurring before commencement—the exact opposite of the situation contemplated by § 9-16. In the present case, the note was endorsed in blank and payable to the possessor, and the note never changed hands.

[15] The defendant included several other arguments in both motions to dismiss, including that the plaintiff was not registered to do business in the state, the statute of limitations should have barred the action, and the plaintiff had committed numerous violations of the federal Truth in Lending Act. These arguments have not been advanced on appeal and are deemed abandoned.

[16] The defendant also argued in her objection to the substitute plaintiff's motion for summary judgment, that the plaintiff was not registered to do business in the state of Connecticut and that her due process rights had been violated by the plaintiff not complying with "federal and state laws regarding notification of assignments . . . and service of process." These arguments have not been advanced on appeal and are deemed abandoned.

[17] "A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors." (Internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 313 n.4; see footnote 10 of this opinion.

[18] The defendant, again, claims that the court should have granted her motion because the issue of the plaintiff's standing was never resolved. Additionally, the defendant repeats her argument that she was not the proper party for the foreclosure action due to the divorce decree and the fact that only Andreas signed the note. We decline to address these issues again.