******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BANK OF AMERICA, N.A. *v.* GRAEME L. STREET ET AL.
## (AC 48109)

Alvord, Elgo and Keller, Js.

*Syllabus*

The defendant property owners appealed from the trial court's judgment of strict foreclosure rendered for the second substitute plaintiff, C Co. The defendants claimed that the court improperly granted C Co.'s motion for summary judgment because, inter alia, a genuine issue of material fact existed as to whether the original plaintiff, A Co., had standing when it commenced the action. *Held*:

This court affirmed the trial court's judgment on an alternative ground, as the record unequivocally indicated that the trial court properly granted A Co.'s motion to substitute the first substitute plaintiff, the real party in interest, pursuant to the rule of practice (§ 9-20), thus curing any jurisdictional defect that may have existed when A Co. commenced the action.

The trial court did not abuse its discretion in denying the defendants' requests to conduct additional discovery prior to the court's ruling on C Co.'s motion for summary judgment, as the defendants did not provide any valid reason why C Co.'s motion for summary judgment should have been denied or the ruling delayed due to their requested discovery, and the defendants' reliance on *JPMorgan Chase Bank, National Assn.* v. *Lakner* (347 Conn. 476) was misplaced, as that case was inapplicable because the defendants in the present case not only received discovery, but received the very discovery required by the court to affirmatively decide the standing issue raised by the defendants in summary judgment.

Argued December 15, 2025—officially released March 24, 2026

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Middlesex, where U.S. Bank National Association, Trustee for the RMAC Trust, Series 2016-CTT, was substituted as the plaintiff; thereafter, U.S. Bank Trust National Association, Trustee for RCF 2 Acquisition Trust, was substituted as the plaintiff; subsequently, the court, *Hon. Edward S. Domnarski*, judge trial referee, granted the substitute plaintiff's motion for summary judgment as to liability only; thereafter, the court, *Hon. Edward S. Domnarski*, judge trial referee,

granted the substitute plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the named defendant et al. appealed to this court. *Affirmed*.

*Thomas P. Willcutts*, for the appellants (named defendant et al.).

*Opinion*

ELGO, J. The defendants Graeme L. Street and Katherine L. Street appeal from the judgment of strict foreclosure rendered by the trial court in favor of the second substitute plaintiff, U.S. Bank Trust National Association, Trustee for RCF 2 Acquisition Trust.[1] On appeal, the defendants claim that the court improperly granted the second substitute plaintiff's motion for summary judgment. More specifically, the defendants contend that (1) a genuine issue of material fact exists as to whether the original plaintiff had standing when the action commenced and (2) the court misapplied the holding in *JP Morgan Chase Bank, National Assn.* v. *Lakner*, 347 Conn. 476, 298 A.3d 249 (2023), when it ruled on the motion for summary judgment despite the

---

[1] The second substitute plaintiff appeared, but has not participated, in this appeal. Because it did not file an appellate brief, we ordered that the appeal shall be considered on the basis of the defendants' brief, oral argument, and the record. See, e.g., *Ammar I.* v. *Evelyn W.*, 227 Conn. App. 827, 830 n.2, 323 A.3d 1111 (2024).

In addition, we note that, although Bank of America, N.A., commenced this foreclosure action, the court granted Bank of America, N.A.'s motion to substitute U.S. Bank National Association, Trustee for the RMAC Trust, Series 2016-CTT, as the substitute plaintiff. The court subsequently granted that party's motion to substitute U.S. Bank Trust National Association, Trustee for the RCF 2 Acquisition Trust, as the second substitute plaintiff. For clarity, we refer to Bank of America, N.A., as the original plaintiff, U.S. Bank National Association, Trustee for the RMAC Trust, Series 2016-CTT, as the substitute plaintiff, and U.S. Bank Trust National Association, Trustee for the RCF 2 Acquisition Trust, as the second substitute plaintiff in this opinion.

Lastly, we note that the Bank of America, N.A., also was named as a defendant in this action, but did not appear. Accordingly, all references herein to the defendants are to Graeme L. Street and Katherine L. Street.

defendants' outstanding discovery requests. We affirm the judgment of the trial court.[2]

The following facts and procedural history, viewed in the light most favorable to the defendants, are relevant to this appeal.[3] On July 31, 2007, the defendants executed and delivered to the original plaintiff a note for a loan in the original principal amount of $940,000. The loan proceeds were used to purchase real property located at 23 River Road Drive in Essex (property), and to secure the note, the defendants mortgaged the property to the original plaintiff. The mortgage was recorded in the Essex land records.

On July 1, 2016, the defendants allegedly failed to make the monthly installment payment on the note, and the original plaintiff exercised its option to declare the entire balance due. On August 3, 2016, the original plaintiff sent notices of default to the defendants. On August 13, 2016, the notices were received and signed by the defendants. On November 16, 2016, the original plaintiff forwarded a bailee letter agreement to its agent, Hunt, Liebert & Jacobson, P.C. Along with the bailee

[2]In their statement of issues in their principal appellate brief, the defendants also set forth an additional claim that the court abused its discretion in denying them their requested relief in their motion for reconsideration. The defendants, however, failed to brief any arguments related to the court's denial of the defendants' motion to reconsider, and we therefore decline to consider it as it is inadequately briefed. See *Hudson City Savings Bank* v. *Hellman*, 234 Conn. App. 45, 72 n.16, 343 A.3d 781 ("Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.)), cert. denied, 353 Conn. 920, 345 A.3d 809 (2025).

[3]We note that this appeal comes to us with a complicated procedural history resulting in numerous delays, which we have not delineated here. Much of this procedural history, which contributed to the unusual length of time this case was on the docket, included a defendant filing for Chapter 7 bankruptcy, attempted mediation, and the case being placed on the dormancy docket. That procedural history is not pertinent to the present appeal.

letter, the mortgage and note were forwarded to the original plaintiff's agent.[4]

On April 7, 2017, the original plaintiff commenced this foreclosure action against the defendants. The initial complaint did not allege that the original plaintiff owned the note, nor did it include the note as an exhibit. The initial complaint was not filed by Hunt, Liebert & Jacobson, P.C., but, rather, by Marinosci Law Group, P.C.

On July 18, 2017, the original plaintiff assigned and transferred the mortgage and note to the substitute plaintiff. On September 20, 2017, the original plaintiff filed a motion to substitute that party pursuant to Practice Book § 9-20.[5] In that motion, the original plaintiff argued that "the mortgage has been assigned since commencing the action in the name of [the original plaintiff] through error and inadvertence . . . ." The court summarily granted this motion.

On September 20, 2018, the substitute plaintiff filed a revised complaint, the operative complaint. The operative complaint alleged that the substitute plaintiff took ownership of the note on July 18, 2017, via an assignment from the original plaintiff. The substitute plaintiff's revised complaint was accompanied by three exhibits:

---

[4] "A bailment involves a delivery of the thing bailed into the possession of the bailee, under a contract to return it to the owner according to the terms of the agreement. . . . A relationship of bailor-bailee arises when the owner, while retaining general title, delivers personal property to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled, or to otherwise deal with the goods according to the bailor's directions. . . . In bailment, the owner or bailor has a general property [interest] in the goods bailed . . . . The bailee, on the other hand, has mere possession of items left in its care pursuant to the bailment." (Emphasis omitted; internal quotation marks omitted.) *Fezollari* v. *Jauzovic*, 232 Conn. App. 20, 36–37, 335 A.3d 861 (2025).

[5] Practice Book § 9-20 provides in relevant part: "When any action has been commenced in the name of the wrong person as the plaintiff, the judicial authority may, if satisfied that it was so commenced through mistake and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as the plaintiff. . . ." (Citation omitted.)

the note, the mortgage, and the assignment. The note produced by the substitute plaintiff was endorsed in blank. By way of relief, the substitute plaintiff requested to foreclose the mortgage, possession of the property, a deficiency judgment against the defendants, the appointment of a receiver to collect rents and profits from the property, and costs and fees.

On January 29, 2019, the defendants filed their answer, in which they largely left the substitute plaintiff to its proof and claimed, as a special defense, that the original plaintiff did not have standing when it commenced the action. Specifically, the defendants alleged that the original plaintiff did not own the note when it commenced the action against them.

On March 23, 2023, the substitute plaintiff filed a motion to substitute the second substitute plaintiff as the sole plaintiff pursuant to Practice Book § 9-16,[6] which the court summarily granted. The substitute plaintiff's motion noted the assignments of the mortgage that ended with the second substitute plaintiff in possession of the mortgage on November 4, 2022. Appended to that motion as an exhibit were copies of the assignments of the mortgage and the note from the substitute plaintiff to DLJ Mortgage Capital, Inc., and from DLJ Mortgage Capital, Inc., to the second substitute plaintiff.

On June 14, 2023, the second substitute plaintiff moved for summary judgment. In its memorandum in support of that motion, the second substitute plaintiff argued that the original plaintiff had standing to commence this foreclosure action, as evidenced by the chain of ownership of the mortgage and the note, which established that standing was maintained throughout the case. To substantiate that argument, the second substitute

---

[6] Practice Book § 9-16 provides: "If, pending the action, the plaintiff assigns the cause of action, the assignee, upon written motion, may either be joined as a coplaintiff or be substituted as a sole plaintiff, as the judicial authority may order; provided that it shall in no manner prejudice the defense of the action as it stood before such change of parties."

plaintiff attached the sworn affidavit of Nik Fox, a case manager employed by Selene Finance, L.P., to its memorandum of law.[7] In that affidavit, Fox averred that the original plaintiff commenced this foreclosure action on or about April 4, 2017. He further stated that the original plaintiff forwarded the note and the mortgage to its agent via a bailee letter on November 16, 2016, and commenced the action on April 4, 2017. Accompanying Fox's affidavit were multiple exhibits, including a copy of the note, endorsed in blank; a copy of the mortgage; and the assignments of the mortgage and the note from the original plaintiff to the substitute plaintiff, from the substitute plaintiff to DLJ Mortgage Capital, Inc., and from DLJ Mortgage Capital, Inc., to the second substitute plaintiff. The assignment of the mortgage and the note from the original plaintiff to the substitute plaintiff occurred on July 18, 2017. In addition, Fox averred that the note and the mortgage currently were in the physical possession of Marinosci Law Group, P.C., attorneys for the second substitute plaintiff. Fox averred that the second substitute plaintiff currently owns the note and the mortgage.

On July 28, 2023, the defendants filed a motion for an extension of time to file an opposition to the motion for summary judgment, arguing that they needed additional time to "resolve outstanding discovery disputes . . . to properly oppose summary judgment." The court granted the defendants' motion.

On December 11, 2023, the defendants noticed a deposition of the second substitute plaintiff's affiant, Fox, wherein the defendants requested that the second substitute plaintiff furnish the "complete mortgage file," including several specific pieces of discovery: all correspondences to or from the defendants, all trust

[7] Selene Finance, L.P., is the loan servicer for the defendants' mortgage, and services the loan on behalf of the second substitute plaintiff, which owns the debt. In his affidavit, Fox stated that all the documents attached as exhibits were business records made in the regular course of the second substitute plaintiff's business and that, to the best of his knowledge, are true.

agreements related to the note, all mortgage servicing agreements related to the note, all pooling and servicing agreements related to the note, all powers of attorney related to the note, all assignments or transfers of the note, all records of mortgage payments by the defendants, and all documents related to the transfer of the note to the second substitute plaintiff. On January 12, 2024, the defendants deposed Fox. On February 23, 2024, the court scheduled a hearing on the motion for summary judgment for March 18, 2024.

On March 15, 2024, three days before the hearing, the defendants filed a memorandum of law in opposition to the second substitute plaintiff's motion for summary judgment. The defendants attached the two notices of deposition and the entire transcript of the Fox deposition as exhibits. In their memorandum of law, the defendants argued that the original plaintiff never had standing to initiate the foreclosure.[8] The defendants also argued that the court should deny or, alternatively, delay ruling on the second substitute plaintiff's motion for summary judgment until the second substitute plaintiff produced the requested discovery.

On March 18, 2024, the court heard oral arguments on the second substitute plaintiff's motion for summary judgment. On the same day, the defendants served requests for admissions on the second substitute plaintiff and filed notice with the court. The defendants requested that the second substitute plaintiff make two admissions: **(1)** that the original plaintiff transferred ownership of the mortgage and the note prior to commencing the foreclosure action and **(2)** that the original plaintiff was not the owner of the mortgage and the note when it commenced this foreclosure action.[9] Also on March

[8] Specifically, the defendants argued at the hearing on the motion for summary judgment that the missing link in the present case is the bailee letter from the original plaintiff to Marinosci Law Group, P.C. In light of this court's resolution of the standing issue on alternative grounds, the defendants' argument is academic. See part I of this opinion.

[9] The second substitute plaintiff never responded to the defendants' requests for admissions.

18, 2024, the defendants filed an affidavit, pursuant to Practice Book § 17-47,[10] and a motion for order of compliance, pursuant to Practice Book § 13-14.[11] In that affidavit, the defendants' attorney, Thomas Willcutts, stated: "During [Fox's] deposition, [Willcutts] raised the issue of the [second substitute] plaintiff providing documents relevant to the [original] plaintiff's standing, but [the second substitute plaintiff's counsel] declined to discuss the matter at that time and [the] parties, to date, have made no further progress on the defendants' outstanding document discovery requests." In the motion to order compliance, the defendants requested that the court compel the second substitute plaintiff to produce the documents requested at the deposition, which the defendants claim came due on or about February 9, 2024.

On April 9, 2024, the court granted the second substitute plaintiff's motion for summary judgment. In its memorandum of decision, the court determined that the only disputed issue on summary judgment was whether the original plaintiff was the holder of the note when this action commenced. The court found that the note was signed on July 31, 2007, and the original plaintiff was the original lender and holder of the note, which was endorsed by the original plaintiff in blank, and the endorsement was not dated. While the court found that the Fox affidavit did not "expressly state" that the original plaintiff was the note holder on the date the action commenced, it found that the exhibits "establish a sequence of events related to dates and ownership of the subject note." Specifically, the court found that,

---

[10] Practice Book § 17-47 provides: "Should it appear from the affidavits of a party opposing the motion that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

[11] Practice Book § 13-14 (a) provides in relevant part: "If a party has failed . . . to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order proportional to the noncompliance as the ends of justice require."

"[a]lthough physical possession of the documents were delivered to the bailee, [the original plaintiff] as bailor, remained the owner and holder of the note." Although the court noted a gap in the chain of bailees—between Hunt, Liebert & Jacobson, P.C., and the Marinosci Law Group, P.C.—the court found that the documentary materials furnished by the second substitute plaintiff in support of its motion for summary judgment established that the original plaintiff was the note holder on November 16, 2016. Additionally, the court found that the action was commenced on April 7, 2017, and the assignment of the note and the mortgage to the substitute plaintiff occurred on July 18, 2017, "more than three months after the action was commenced." The court concluded that "[the] documentary evidence is sufficient to establish that [the original plaintiff] was the holder of the note between November 16, 2016, and July 18, 2017, and thus, [the original plaintiff] was the holder of the note when it commenced this action on April 7, 2017."

Moreover, the court determined that the defendants "have not submitted any affidavits or other evidence to establish that an entity other than [the original plaintiff] was the holder of the note when the action was commenced on April 7, 2017. The defendants essentially speculate that [the original plaintiff] was not the holder of the note when the action commenced because of the . . . language in the [September 20, 2017] motion to substitute plaintiff. . . . The defendants have raised the issue of standing but they have not provided any proof, let alone sufficient proof, to establish that [the original plaintiff] did not have standing to bring this action on April 7, 2017."

Regarding the defendants' discovery requests, the court noted that the defendants had filed an affidavit pursuant to Practice Book § 17-47 claiming that not all the requested documents were produced. The court stated that "the defendants have not established a valid reason why the [second substitute] plaintiff's motion should be denied, or how additional documents [would

be] necessary. As noted earlier, the [original] plaintiff's affiant was deposed and the affidavit and supporting documents were made exhibits at the deposition. In pressing this motion, the [second substitute] plaintiff has not relied on any documents that have not been provided to the defendants. . . . The defendants had all of the documents that the [second substitute] plaintiff submitted to the court. The affidavit and supporting documents establish[ed] that the [original] plaintiff [had] standing. Standing [was] the only issue raised by the defendants in their motion." Accordingly, the court rendered summary judgment as to liability in favor of the second substitute plaintiff.

On April 29, 2024, the defendants filed a motion to reargue. The second substitute plaintiff objected to the defendants' motion. On May 23, 2024, the defendants filed an evidentiary supplement to their motion to reargue, in which they argued that the second substitute plaintiff had failed to respond to its requests for admission, which amounted to a conclusive admission that the original plaintiff did not own the note when it commenced this action.[12] On May 29, 2024, the defendants filed a memorandum of law in support of their motion to reargue, wherein they claimed the court misapplied the holding in *JP Morgan Chase Bank, National Assn.* v. *Lakner*, supra, 347 Conn. 476, and raised the defense of standing, in part based on the requests for admission deemed admitted. The court granted the defendants' request to reargue and heard oral arguments on the defendants' motion on June 17, 2024. By order dated July 1, 2024, the court summarily denied the relief requested by the defendants.

[12] Practice Book § 13-23 (a) provides in relevant part: "Each matter of which an admission is requested is admitted unless, within thirty days after the filing of the notice required by Section 13-22 (b) . . . the party to whom the request is directed files and serves upon the party requesting the admission a written answer or objection addressed to the matter . . . ."

Practice Book § 13-24 (a) provides in relevant part: "Any matter admitted under this section is conclusively established unless the judicial authority on motion permits withdrawal or amendment of the admission. . . ."

On September 4, 2024, the second substitute plaintiff filed a motion for a judgment of strict foreclosure. The court granted the second substitute plaintiff's motion and entered a judgment of strict foreclosure on September 23, 2024. The court found that the total debt was approximately $1.4 million and the fair market value of the property was approximately $1.25 million. The court set the first law day for October 28, 2024. This appeal followed.

As a preliminary matter, we note the standard of review and relevant legal principles. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . A material fact is one that makes a difference in the outcome of a case. . . .

"Summary judgment shall be granted if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"[T]o establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure . . . have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense. . . .

"[T]he party raising a special defense has the burden of proving the facts alleged therein. . . . If the plaintiff in a foreclosure action has shown that it is entitled to foreclose, then the burden is on the defendant to produce

evidence supporting its special defenses in order to create a genuine issue of material fact . . . . Legally sufficient special defenses alone do not meet the defendant's burden. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . Further . . . [t]he applicable rule regarding the material facts to be considered on a motion for summary judgment is that the facts at issue are those alleged in the pleadings. . . . [B]ecause any valid special defense raised by the defendant ultimately would prevent the court from rendering judgment for the plaintiff, a motion for summary judgment should be denied when any [special] defense presents significant fact issues that should be tried. . . .

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [plaintiff] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bretoux*, 225 Conn. App. 455, 462–63, 317 A.3d 152 (2024).

I

We first address the defendants' claim that the original plaintiff lacked standing when it commenced this foreclosure action. We conclude that the original plaintiff properly substituted the real party in interest pursuant to Practice Book § 9-20, thus curing any jurisdictional defect that may have existed when the original plaintiff commenced this action. We thus affirm the court's ruling on an alternative ground.[13]

---

[13] See, e.g., *Grady* v. *Somers*, 294 Conn. 324, 349 n.28, 984 A.2d 684 (2009).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of this question of law is plenary.

"Generally, in order to have standing to bring a foreclosure action the plaintiff must, at the time the action is commenced, be entitled to enforce the promissory note that is secured by the property. . . . The plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action. . . . After the plaintiff has presented this prima facie evidence, the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action or to rebut the presumption that [the plaintiff] owns the underlying debt. . . .

"The rules for standing in foreclosure actions when the issue of standing is raised may be succinctly summarized as follows. When a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt had passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that might give rise to the possibility that some other party owns the debt. In order to rebut the presumption,

the defendant must prove that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Goshen Mortgage, LLC* v. *Androulidakis*, 205 Conn. App. 15, 23–25, 257 A.3d 360, cert. denied, 338 Conn. 913, 259 A.3d 653 (2021).

Although lack of standing is generally a jurisdictional defect, the legislature has deemed it curable: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." General Statutes § 52-109; see also Practice Book § 9-20.[14] As our Supreme Court explained: "Although a plaintiff's lack of standing is a jurisdictional defect . . . it is a type of jurisdictional defect that our legislature, through the enactment of § 52-109, has deemed amenable to correction and, therefore, not irremediably fatal to an action. . . . [Section] 52-109 allow[s] a substituted plaintiff to enter a case [w]hen any action has been commenced in the name of the wrong person as [the] plaintiff, and that such a substitution will relate back to and correct, retroactively, any defect in a prior pleading concerning the identity of the real party in interest. . . . Thus, a substitution of a real party in interest as the plaintiff cures the lack of standing of the original plaintiff . . . and, further, is permissible even after the statute of limitations has run. . . . An addition or substitution is discretionary, but generally should be allowed when, due to an error, misunderstanding or misconception, an action was commenced in the name of the wrong party, instead of the real party in interest, whose presence is required for a determination of the matter in dispute." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 552–53, 133 A.3d 140 (2016).

[14] See footnote 5 of this opinion.

This court has expressly stated that, in a foreclosure action wherein the plaintiff commenced the action without standing, the only remedy was either dismissal due to a lack of subject matter jurisdiction or substitution of the proper plaintiff pursuant to § 52-109 and Practice Book § 9-20. See *Ion Bank* v. *J.C.C. Custom Homes, LLC*, 189 Conn. App. 30, 42, 206 A.3d 208 (2019) ("[T]he court lacks subject matter jurisdiction over an action commenced by a plaintiff without standing. . . . Other than a dismissal of the action, the only remedy available if the wrong party commences an action is found in § 52-109 and Practice Book § 9-20.").

In the present case, assuming arguendo that the defendants are correct insofar as the original plaintiff did not have standing to commence this action, the record unequivocally indicates that the original plaintiff filed a motion to substitute party pursuant to Practice Book § 9-20.[15] In that motion, the original plaintiff argued that "the mortgage has been assigned since commencing the action in the name of [the original plaintiff] through error and inadvertence, which assignment is identified in the [attached exhibit]."[16] The purpose of a substitution

[15] The defendants also argue that the original plaintiff did not have standing due to the defendants' requests for admission, which were deemed admitted by operation of Practice Book §§ 13-23 (a) and 13-24 after the second substitute plaintiff failed to respond to them within thirty days. The defendants requested the second substitute plaintiff make two admissions: (1) that the original plaintiff transferred ownership of the mortgage and the note prior to filing the foreclosure action and (2) that the original plaintiff was not the owner of the note when it commenced this foreclosure action. The defendants argue that these two admissions conclusively prove that the original plaintiff did not have standing when it commenced the action. Our analysis is the same whether we assume that the original plaintiff lacked standing or take these admissions as conclusive proof that the original plaintiff lacked standing.

[16] The defendants also argue that this language in the original plaintiff's motion to substitute party implies that the original plaintiff did not have standing when the action commenced. Insofar as the filing of a motion pursuant to Practice Book § 9-20 itself suggests that the original plaintiff did not have standing when the action commenced, the remedial purpose of § 9-20, which cures a standing defect, renders the defendants' contention academic.

pursuant to § 9-20 is to "[cure] the lack of standing of the original plaintiff . . . ." (Citation omitted; internal quotation marks omitted.) *Goshen Mortgage, LLC* v. *Androulidakis*, supra, 205 Conn. App. 32. In the present case, the court granted the original plaintiff's § 9-20 motion.[17] In so doing, any defect in the original plaintiff's standing was cured. We therefore conclude that the trial court reached the proper determination and affirm its conclusion on an alternative ground.[18]

## II

The defendants also claim that the court misapplied the holding in *JPMorgan Chase Bank, National Assn.* v. *Lakner*, supra, 347 Conn. 476, by ruling on the second substitute plaintiff's motion for summary judgment

[17] Although the original plaintiff did not file the required memorandum of law with its motion to substitute party pursuant to Practice Book § 11-10 and the court did not make a specific finding that the action was commenced in the name of the wrong plaintiff due to some mistake in its summary ruling, the record indicates that the defendants never objected to the original plaintiff's motion to substitute party. Further, we "do not presume error on the part of the trial court." *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013). Moreover, the defendants have not challenged the propriety of the court's ruling on the original plaintiff's motion to substitute party in this appeal. See *Gosselin* v. *Gosselin*, 110 Conn. App. 142, 151–52, 955 A.2d 60 (2008) ("It is fundamental that the scope of appellate review in a given appeal is defined by the claims of error actually raised by the parties. . . . [I]n the absence of a question relating to subject matter jurisdiction, the Appellate Court may not reach out and decide a case before it on the basis that the parties never have raised or briefed. . . . That precedent is grounded in the principle of judicial restraint." (Citations omitted; internal quotation marks omitted.)).

[18] We note that, after being substituted, the substitute plaintiff filed an amended complaint, wherein the substitute plaintiff produced a copy of the note, endorsed in blank; a copy of the mortgage; and a copy of the assignment from the original plaintiff to the substitute plaintiff. The defendants do not challenge the substitute plaintiff's standing in this action. Likewise, in its motion for summary judgment, the second substitute plaintiff produced a copy of the note, endorsed in blank, and the chain of assignments showing the assignments of the note and the mortgage from the original plaintiff to the substitute plaintiff, from the substitute plaintiff to DLJ Mortgage Capital, Inc., and from DLJ Mortgage Capital, Inc., to the second substitute plaintiff. The defendants do not challenge the second substitute plaintiff's standing in this action.

when several of their discovery requests were outstanding.[19] We disagree.

First, we note that the defendants' framing of this claim misstates the court's ruling on the defendants' discovery requests in its memorandum of decision on summary judgment, specifically regarding the defendants' Practice Book § 17-47 affidavit. The court determined both that the defendants had received relevant discovery from the second substitute plaintiff and that the defendants had failed to provide a valid reason as to why any additional documentary discovery would be necessary to decide the standing issue, the only disputed issue on summary judgment. The defendants' argument, thus, is more properly framed as a question of whether the court abused its discretion in ruling on summary judgment in light of the defendants' § 17-47 affidavit and request to deny or delay ruling on summary judgment.

Practice Book § 17-47 provides: "Should it appear from the affidavits of a party opposing the motion that such

---

[19] The defendants also filed a motion to compel pursuant to Practice Book § 13-14 (a). We note that the court did not explicitly rule on the defendants' motion to compel production. Nevertheless, our review of the court's memorandum of decision on the second substitute plaintiff's motion for summary judgment, in which it more generally addressed and rejected the defendants' additional requests for discovery, notably filed on the date of the hearing itself, convinces us that the court implicitly denied the defendants' motion to compel. See, e.g., *Pryor* v. *Brignole*, 231 Conn. App. 659, 695, 333 A.3d 1112 (2025) (concluding, on basis of trial court's memorandum of decision and record, that trial court implicitly granted defendants' motions). We note that trial courts have broad discretion in managing discovery. See *Traystman* v. *Traystman*, 141 Conn. App. 789, 802, 62 A.3d 1149 (2013) ("With respect to the appropriate standard of review [regarding the court's ruling on discovery requests], Practice Book § 13-14 (a) provides in relevant part that a trial court may, on motion [to compel production], make such order as the ends of justice require. Consequently, the granting or denial of a discovery request rests in the sound discretion of the court . . . and can be reversed only if such an order constitutes an abuse of that discretion. The ultimate issue in our review is, therefore, whether the trial court reasonably could have concluded as it did." (Internal quotation marks omitted.)). In this appeal, the defendants have not raised a claim regarding their motion to compel. As it is not properly before us, we will not consider the propriety of the court's actions with respect to that discovery request.

party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." We further note: "A party opposing a summary judgment motion [pursuant to § 17-47] on the ground that more time is needed to conduct discovery bears the burden of establishing a valid reason why the motion should be denied or its resolution postponed, including some indication as to what steps that party has taken to secure facts necessary to defeat the motion. Furthermore, under § 17-47, the opposing party must show by affidavit precisely what facts are within the exclusive knowledge of the moving party and what steps he has taken to attempt to acquire these facts. . . . [A] party contending that it needs to conduct discovery to respond to a motion for summary judgment must do more than merely claim the information needed is within the possession of the opposing party." (Citation omitted; internal quotation marks omitted.) *CIT Bank, N.A.* v. *Francis*, 214 Conn. App. 332, 347, 280 A.3d 485 (2022). "A trial court's adjudication of a motion for a continuance pursuant to . . . § 17-47 is reviewed for an abuse of discretion. . . . Under the abuse of discretion standard for review, [an appellate court] will make every reasonable presumption in favor of upholding the trial court's ruling and only upset it for a manifest abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Goody* v. *Bedard*, 200 Conn. App. 621, 627, 241 A.3d 163 (2020).

Additionally, trial courts "ha[ve] wide discretion" under Practice Book § 17-49[20] "to determine whether the party seeking additional time to conduct discovery already has had a sufficient opportunity to establish facts in opposition to the summary judgment motion, and we will not disturb its exercise of that discretion absent a clear showing of abuse." *Peerless Ins. Co.* v. *Gonzalez*,

---

[20] Practice Book § 17-49 provides: "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

241 Conn. 476, 489, 697 A.2d 680 (1997); see also *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 714, 735 A.2d 306 (1999).

The defendants did not file a motion for a continuance with their Practice Book § 17-47 affidavit. Rather, they argued, in their memorandum in opposition to summary judgment, that the court should deny or delay ruling on summary judgment until the defendants received requested discovery. The defendants claim that their requested discovery would address the disputed issue of standing. In their § 17-47 affidavit, the defendants stated only that there existed a discovery dispute and the second substitute plaintiff had "made no further progress on the defendants' outstanding document discovery requests." The defendants did not describe the requested documents nor describe what facts those documents supposedly contain. The court stated that the defendants "have not established a valid reason why the [second substitute] plaintiff's motion should be denied, or how additional documents are necessary. As noted earlier, the [second substitute] plaintiff's affiant was deposed and the affidavit and supporting documents were made exhibits at the deposition. In pressing this motion, the [second substitute] plaintiff has not relied on any documents that have not been provided to the defendants. . . . The defendants had all of the documents that the [second substitute] plaintiff submitted to the court. The affidavit and supporting documents establish the [second substitute] plaintiff has standing. Standing is the only issue raised by the defendants in their motion."

In the present case, the defendants' affidavit failed to describe the facts "within the exclusive knowledge of the moving party" and did nothing more than "merely claim [that] the information needed is within the possession of the opposing party." (Internal quotation marks omitted.) *CIT Bank, N.A.* v. *Francis*, supra, 214 Conn. App. 347. We are further mindful that the "information needed" is irrelevant in light of our analysis in part I of this opinion. In sum, the defendants have not provided any valid reason why the second substitute plaintiff's motion

for summary judgment should have been denied or the ruling should have been delayed due to their requested discovery.

For this reason, the defendant's reliance on *Lakner* is misplaced. In *Lakner*, the defendant attempted to secure documentary discovery in support of his defense of payment. *JP Morgan Chase Bank, National Assn.* v. *Lakner*, supra, 347 Conn. 482. The plaintiff moved for a protective order, which the court granted, essentially denying the defendant all documentary discovery. Id., 483. At trial, the plaintiff, however, produced an exhibit consisting of the transactions, payments, and loan history of the defendant's mortgage to prove the defendant's debt. Id., 484–85. On the basis of these documents, the defendant appeared to have a valid defense of payment related to the bank overcalculating his interest rate, but the trial court refused to consider it because the defendant did not raise that defense before trial. Id., 488–89. Our Supreme Court, in reversing the trial court's judgment, observed that, "[a]lthough many foreclosure cases will proceed without the need for discovery, it should come as no surprise, in a contested case, that a defendant or his or her attorney will need to review those aspects of the lender's file that may lead to the discovery of admissible evidence relating to one or more disputed issues. This is particularly so when, as here, the defendant raises a special defense of payment." Id., 493. Under the particular facts of *Lakner*, our Supreme Court concluded that the trial court abused its discretion in granting the plaintiff's protective order and then concluded that the defendant was harmed by the protective order, which "substantially prevented him from having the opportunity to pursue, develop and support the defense he raised." Id., 496.

*Lakner* is inapplicable to the present case because the defendants not only received discovery, but received the very discovery required by the court to affirmatively decide the standing issue raised by the defendants in summary judgment. Specifically, the court found that "the [second substitute] plaintiff's affiant was deposed and the affidavit and supporting documents were made

exhibits at the deposition." Additionally, the discovery the defendants seek is irrelevant in light of our analysis in part I of this opinion. As such, the trial court did not err in declining to apply *Lakner* to the present case. We thus conclude that the court did not abuse its discretion in denying the defendants' requests to conduct additional discovery prior to ruling on the second substitute plaintiff's motion for summary judgment.

The judgment is affirmed and the case is remanded for the purpose of making a new finding as to the amount of the debt, for the setting of new law days, and for other proceedings according to law.

In this opinion the other judges concurred.